# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

REGINALD HOWARD,

Plaintiff,

v.

BRIAN CONNETT, et al.,

Defendants.

Case No. 2:11-cv-01402-RFB-GWF

**ORDER**

Plaintiff's Second Motion for Default Judgment (ECF No. 234); Defendants' Motion to Amend/Correct Judgment on Attorney Fees (ECF No. 242)

## I. INTRODUCTION

Before the Court is Plaintiff's Second Motion for Default Judgment (ECF No. 234) and Defendants' Motion to Amend/Correct Judgment on Attorney Fees (ECF No. 242). For the reasons discussed below, Plaintiff's Motion is granted and Defendant's Motion is denied.

## II. PROCEDURAL BACKGROUND

Plaintiff filed his Amended Complaint in this case on November 1, 2011. ECF No. 4. The Court filed an Order granting in part and denying in part Motions for Summary Judgment on February 14, 2014. ECF No. 62. Deputy Attorney General Mercedes S. Menendez made her appearance in March 2013 on behalf of all named Defendants. ECF No. 85. Menendez filed, and the Court granted, a Motion to Withdraw as Attorney of Record for Cheryl Burson in July 2015, stating that Burson had no interest in participating in the defense of this case. ECF Nos. 110 and

113. Additionally, Menendez filed, and this Court granted, a Motion to Withdraw as Attorney of Record for Ryan Klein in July 2015, citing unsuccessful attempts to contact and locate him. ECF Nos. 111 and 115.

A jury trial was held in this matter from October 26, 2015 to November 6, 2015, for all remaining Defendants except Burson and Klein, who did not participate. On October 29, 2015, Plaintiff moved for, and the Court granted, default against Burson and Klein. ECF No. 216, at 44-46. Subsequently, Plaintiff moved for Entry of Clerk's Default pursuant to Fed. R. Civ. P. 55(a). ECF No. 232. The Clerk of the Court entered default against Burson and Klein on September 9, 2016. ECF No. 233. Following entry of the Clerk's default, Plaintiff moved for an award of damages against Burson and Klein, via a Second Motion for Default Judgment. ECF No. 234. The Clerk of the Court entered a Judgment on Attorney Fees on October 18, 2017. ECF No. 241. Defendants filed a Motion to Amend/Correct Judgment on Attorney Fees on October 20, 2017. ECF No. 242. The Court held a hearing on this matter on July 18, 2018. ECF No. 250.

### III. DISCUSSION

#### A. Second Motion for Default Judgment (ECF No. 234)

##### 1. *Legal Standard*

The granting of a default judgment is a two-step process directed by Rule 55 of the Federal Rules of Civil Procedure. Eitel v. McCool, 782 F.2d 1470, 1471 (9th Cir. 1986). The first step is an entry of default, which must be made by the clerk following a showing, by affidavit or otherwise, that the party against whom the judgment is sought "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). The second step is entry of a default judgment under Rule 55(b), a decision which lies within the discretion of the Court. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors which a court, in its discretion, may consider in deciding whether to grant a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of the substantive claims, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5) the

possibility of a dispute of material fact, (6) whether the default was due to excusable neglect, and (7) the Federal Rules' strong policy in favor of deciding cases on the merits. Eitel, 782 F.2d at 1471-72.

If an entry of default is made, the Court accepts all well-pleaded factual allegations in the complaint as true; however, conclusions of law and allegations of fact that are not well-pleaded will not be deemed admitted by the defaulted party. DirecTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007). Additionally, the Court does not accept factual allegations relating to the amount of damages as true. Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977). Default establishes a party's liability, but not the amount of damages claimed in the pleading. Id. Both compensatory and punitive damages are available under 42 U.S.C. § 1983. Smith v. Wade, 461 U.S. 30, 56 (1983). Punitive damages may be assessed under § 1983 when a defendant's conduct is shown to be motivated by evil motive or intent, or if it involves reckless or callous indifference to the federally protected rights of others. Id. Furthermore, punitive damages may be assessed against a defendant in the event of a default judgment in a § 1983 case and facts accepted as true for purposes of liability can also be used to establish the defendant's state of mind for purposes of determining whether punitive damages are warranted. See Fair Hous. v. Combs, 285 F.3d 899, 906-907 (9th Cir. 2002); see also Libertad v. Sanchez, 215 F.3d 206, 208 (1st Cir. 2000) ("insofar as the allegations establish that Sanchez acted intentionally and out of hostility towards women, they also seem sufficient to put the question of punitive damages into play").

### *2. Discussion*

During the course of the jury trial on October 29, 2015, Plaintiff moved for, and the Court granted, default judgment against Defendants Burson and Klein. ECF No. 216 at 44-46. Subsequently, Plaintiff moved for Entry of Clerk's Default pursuant to Fed. R. Civ. P. 55(a). ECF No. 232. The Clerk of the Court entered default against Defendants Burson and Klein on September 9, 2016. ECF No. 233. Plaintiff now moves for an entry of monetary judgment against these Defendants. ECF No. 234.

### *i. Defendant Klein*

As explained on the record during the jury trial in this case, the Court finds that the Eitel factors favor entry of default judgment against Defendant Klein. Defendant Klein was a named Defendant in this case, but did not participate in his defense, did not attend the jury trial or send representation on his behalf, and the parties have not been able to contact him. Plaintiff will be prejudiced in the absence a default judgment, as he will be unable to recover for the harms alleged against Defendant Klein. There is nothing to suggest that the amount of damages at issue here are so onerous that it would be unfair to award them to the Plaintiff via default judgment. The sufficiency and merits of the claims against Defendant Klein are evidenced by their survival of both motions to dismiss and motions for summary judgment. Although during the jury trial, the Court granted directed verdicts to the other Defendants on the Eighth Amendment conditions of confinement and First Amendment retaliation claims from Count 3, the Court was clear in its rulings that these directed verdicts did not apply to the defaulted Defendants. Further, the Defendants indicated in their Motion to Withdraw as Attorney of Record for Ryan Klein that Defendant Klein had signed a Return Receipt for a letter related to this case, indicating that he was at least aware that he was named as a Defendant, and that his lack of appearance is not due to excusable neglect. ECF No. 111 at 4. Considering all of these factors, the Court finds it is appropriate to enter default judgment against Defendant Klein.

Next, the Court turns to the amount of monetary damages to award. Plaintiff briefed this issue (ECF No. 234) and the Court held a hearing related to default judgment on July 18, 2018. Although Plaintiff requests that the Court award greater damages against the defaulted Defendants than the jury awarded against the Defendants who went to trial, the Court does not find the Defendants' actions in failing to defend themselves in this case to be appropriate factors to consider

in determining compensatory and punitive damages for the underlying claims. The Court will consider the conduct alleged in the well-pleaded facts in the Complaint, however, which is now accepted as true for purposes of this motion. In his Amended Complaint, Plaintiff alleges that in January 2011 he was taken into confinement and, for twelve days, was denied legal material, religious and personal properties, contact with his family, writing material, hygienic material, and a change of clothes. ECF No. 4 at 13. Plaintiff also alleges that his confinement cell was cold and did not contain blankets, and that he was forced to drip-dry in the cell after showers. Id. Plaintiff alleges that he was subjected to these conditions in retaliation for a 2008 civil suit against a prison employee. Id. He also alleges that he personally informed Defendant Klein and other officers of these conditions and that Defendat Klein was the "property officer" at the time. As the retaliation claim necessarily alleges that Defendant Klein acted intentionally in response to Plaintiff exercising his constitutionally protected rights, it alleges evil motive or intent sufficient to warrant punitive damages. Smith, 461 U.S. at 56. To the extent that the Eighth Amendment conditions of confinement claim alleges that Defendant Klein was personally informed of the inhumane conditions Plaintiff was subjected to and, as the property officer, was in a position to help remedy these conditions but chose not to, it demonstrates reckless or callous indifference to Plaintiff's constitutional rights and also warrants punitive damages. Id. At trial, the jury awarded $1,000 in compensatory damages and $1,000 in punitive damages against each of the other Defendants on the First Amendment free exercise claim in Count 3, arising out of these same facts. The Court finds these to be appropriate guideposts in determining the amount of damages to award against Defendant Klein. Therefore, the Court will award $1,000 in compensatory damages and $1,000 in punitive damages against Defendant Klein on each claim, for a total of $4,000.

### ii. Defendant Burson

The Court similarly finds that the Eitel factors favor entry of default judgment against Defendant Burson. Defendants included an affidavit with their Motion to Withdraw as Attorney of Record for Cheryl Burson. ECF No. 110, Ex. A. In it, Deputy Attorney General Andrea R. Barraclough states that she spoke with Defendant Burson over the phone on June 2, 2014, and Defendant Burson informed her that she is no longer living in the United States, but has permanently moved to Belize and did not intend to return to the United States to attend trial, even though she was aware that default judgment may be entered against her. Id. According to the affidavit, Defendant Burson also stated "that it did not matter to her if some inmates had default judgments against her, because she believed that it would be impossible for the inmates to collect any judgment against her, as all of her assets and money were located in Belize." Id. Thus, Defendant Burson's failure to participate in her own defense was clearly knowing and intentional, rather than an inadvertent mistake. All of the claims against Defendant Burson survived motions to dismiss and motions for summary judgment, and Plaintiff prevailed on two of the claims against other Defendants at the jury trial. Again, the Court was clear that its directed verdicts on retaliation for the 2008 lawsuit did not apply to the defaulted Defendants. The damages sought are not so large that it would be unfair to award them via default judgment. Plaintiff will be prejudiced in the absence a default judgment, as he will be unable to recover for the harms alleged against Defendant Burson. Considering these factors, the Court finds it appropriate to enter default judgment against Defendant Burson.

The Court next turns to the question of monetary damages. The well-pleaded facts in the Amended Complaint, accepted as true for purposes of this motion, establish that Defendant Burson was the Assistant Warden and was personally aware that inmates were being denied access to

Nation of Islam religious services and that Plaintiff in particular was arbitrarily being prevented from participating in Friday prayer on an ongoing basis. ECF No. 4 at 17. The Complaint also alleges that these religious deprivations were in retaliation for Plaintiff's 2008 civil rights lawsuit. Again, the retaliation claim alleges evil motive or intent sufficient to warrant punitive damages. Smith, 461 U.S. at 56. The equal protection and free exercise claims allege reckless or callous indifference to Plaintiff's constitutional rights and also warrant punitive damages. Id. At trial, the jury awarded $1,000 in compensatory damages and $2,200 in punitive damages against each of the remaining Defendants on the equal protection and free exercise claims in Count 5. The Court later remitted the amount of punitive damages against Defendant Connett for the equal protection claim, finding that the evidence presented at trial regarding his knowledge of Plaintiff being treated differently was not as substantial as the evidence related to the other Defendants. ECF No. 240 at 16. However, because Defendant Burson knowingly refused to attend trial and participate in her own defense, she lost the opportunity to make arguments regarding the weight of the evidence and instead the Court must assume the truth of all well-pleaded facts. Therefore, the Court finds it appropriate to award the Plaintiff $1,000 in compensatory damages and $2,200 in punitive damages against Defendant Burson on each of these three claims, for a total of $9,600.

**B. Motion to Amend/Correct Judgment on Attorney Fees (ECF No. 242)**

***i. Legal Standard***

Under the PLRA, in actions resulting in monetary judgments, the total amount of the attorney fees award associated with the money judgment is limited to 150 percent of the judgment. 42 U.S.C § 1997e(d)(2); see Jimenez v. Franklin, 680 F.3d 1096, 1100 (9th Cir. 2012); Kelly v. Wengler, 822 F.3d 1085, 1100 (9th Cir. 2016) ("In cases involving monetary judgments, the PLRA expressly limits the total amount of the attorney's fees award associated with the monetary judgment to 150 percent of the judgment.").

### *ii. Discussion*

After the conclusion of the jury trial, the Court awarded Plaintiff attorney fees in the amount of $46,819. ECF No. 240 at 25. Before the addition of the monetary damages against the defaulted Defendants, the total damages awarded Plaintiff were $25,700. Defendants point out that the award of attorney fees is greater than 150 percent of the total monetary damages and request that the Court adjust the attorney fees accordingly. Plaintiff requests that the Court include any monetary damages against the defaulted Defendants before calculating the cap on attorney fees. Defendants argue that, as they are no longer representing the defaulted Defendants, the Court should apportion the damages against Defendants Klein and Burson separately and not include those damages in the total and joint and several attorney fee calculation for purposes of the 150 percent cap under the PLRA. However, the Court does not find that Defendants' requested damages calculation is authorized by the statute and also does not find it workable as a policy matter. The plain language of the statute does not require or support such an apportionment. The statute does not suggest when or how to make such an apportionment. The Court will therefore include the additional monetary damages against Defendants Klein and Burson in the total damages for purposes of the attorney fee calculation under the PLRA. With the addition of the monetary damages against the defaulted Defendants, the Plaintiff has been awarded a total of $39,300 in damages. Based on this amount, the 150 percent cap on attorney fees is $58,950. Because this is greater than the amount of attorney fees originally awarded, the Court denies Defendants' Motion to Amend/Correct Judgment on Attorney Fees (ECF No. 242).

### IV. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the Plaintiff's Second Motion for Default Judgment (ECF No. 234) is GRANTED. The Clerk of the Court is ordered to amend the judgment in this

case to include an award of $4,000 in damages against Defendant Klein and $9,600 in damages against Defendant Burson.

**IT IS FURTHER ORDERED** that Defendants' Motion to Amend/Correct Judgment on Attorney Fees (ECF No. 242) is DENIED.

The Clerk of Court is instructed to close this case.

DATED: August 23, 2018.

_____
**RICHARD F. BOULWARE, II
UNITED STATES DISTRICT JUDGE**